*Alexander Love, Jr.,* with him *Albert H. Ladner, Jr.,* for appellee.

PER CURIAM, January 27, 1944:

The judgment of the court below is affirmed on the opinion of Judge FLOOD. To the authorities cited by him may be added *Cherillo v. Steinberg,* 118 Pa. Superior Ct. 485, 180 A. 115, and the cases therein reviewed.

Judgment affirmed.

## Wartman *v.* Shockley, Appellant.

Argued November 9, 1943. Before KELLER, P. J.,

BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

The facts are stated in the opinion by SHANAMAN, J. of the court below, as follows:

Plaintiff sued defendant, a real estate broker, to recover $420.00 down money, paid by plaintiff to defendant, on March 9, 1942, and alleged to be due upon a receipt signed and given by Shockley's employee Ray to plaintiff. The receipt read as follows:

"C. B. SHOCKLEY FARM AGENCY
No. 43                                    March 9, 1942
    Received of George D. Wartman Four Hundred twenty and 00/100 Dollars 10% Payment on farm of Ralph Madara subject to acceptance by Mr. Madara. Check to be returned if deal is not completed or if Mr. Wartman can not get mortgage to cover balance. Price of farm $4200, balance $3780.00.
$420.00
                              A. B. Ray
                         For C. B. Shockley"

After paying the down money, plaintiff on March 23, 1942, entered into a written agreement with Madara and his wife, the owners of the farm, for its purchase. The agreement was in ordinary form; consideration mentioned was $4200.00, to be paid "Four Hundred Twenty ($420.00) Dollars on the signing of this agreement, receipt whereof is hereby acknowledged, the balance Thirty Seven Hundred Eighty ($3780.00) Dollars on delivery of deed." The agreement is silent as to a

conditional return of the down money to plaintiff but mentions that Shockley is not responsible for securing mortgages on the property. Plaintiff was unable to get a mortgage for more than $2000.00, which the Mt. Penn Trust Company was willing to place, and did approve April 2, 1942. On May 7, 1942, the Madaras and plaintiff met with the Mt. Penn Trust Company, which had discovered the existence of an encumbrance on the title. The settlement date was therefore postponed. When arrangements had been completed to remove the encumbrance, the final settlement meeting was held on May 22; plaintiff did not attend it, and the sale was never consummated. Shockley never actually turned over the $420.00 to Madara, but deposited the check for it in his own account and after deducting $336.00 commission, paid the remainder of $84.00 to Madara. At the trial, the jury returned a verdict for plaintiff for $429.32. Defendant took rules for judgment n.o.v. and for new trial.

The agreement to return the down money was Shockley's own contract and obligation. Ray's authority to bind Shockley is not disputed. The receipt does not state that Shockley acts as agent for Madara; consistently with its tenor, Shockley might be acting for himself. The receipt is not signed "Shockley, agent for Madara", or "Shockley, agent." It is signed "Ray for Shockley", and engages that "check to be returned." "A person contracting as agent will be personally liable, whether he is known to be agent or not, in all cases where he makes the contract in his own name or voluntarily incurs a personal responsibility either expressed or implied." Horwath et al. v. Simon, 95 Pa. Superior 410, 414. Defendant took plaintiff's check under a special agreement to return it. Neither Madara nor Ray testified that the existence of such agreement was divulged to Madara. Defendant himself testified that he knew of the return clause but did not communicate

it to Madara. Nevertheless, he banked plaintiff's check in his own account, used the greater part of the proceeds to pay himself commissions as Madara's agent and remitted the remainder to Madara. When plaintiff did not, and, so far as appears, could not obtain a mortgage to finance the balance of the purchase price, the deal fell through. Under such circumstances, it was an imposition on plaintiff if the law did not permit him to recover the down money. See Gable v. Crane, 24 Pa. Superior 56.

Defendant contends that as a matter of law plaintiff must be taken to have waived the benefit of the provision for return of down money, because he signed an agreement of sale with Madara, from which the stipulation is absent. The technical doctrine that all stipulations made before the written agreement of sale is executed in final form, are merged in it and disappear from the contract if such stipulations would reasonably be expected to appear in the agreement and do not appear therein, does not aid the defendant. Madara never became a party to Shockley's stipulation, and therefore it was not subject to merger between Madara and plaintiff. Madara's agreement with plaintiff contained a clause. "The said C. B. Shockley Farm Agency shall not be held responsible for securing mortgages on the property mentioned in this agreement as they are only acting agents for the parties of the first part." We are not of opinion that this clause constituted a release by plaintiff of the conditions in the Shockley receipt. The clause is in no way inconsistent with the stipulation for the return of down money. It merely states definitely that Shockley shall have no responsibility to get the mortgage, and implies that if he does procure it, he shall have a fee for so doing. The rule for judgment n.o.v. must be dismissed.

The rule for new trial is likewise without merit. The burden was on defendant to show waiver. Defendant

supported this theory upon a number of circumstances which depending at least partly upon oral testimony were for the consideration of the jury. He introduced the testimony of Willman, the trust officer of Mt. Penn Trust Company, to the effect that on or about April 2, when the company approved the loan for $2000.00 for mortgage, plaintiff stated that he was ready to go on and that the $2000.00 mortgage was all he needed. Plaintiff testified that at the settlement meeting on May 7, the matter of ability to finance the purchase was never reached owing to the discovery of the encumbrance and that he was not then able to finance the purchase. There is no testimony that he could obtain the full mortgage, and the jury could find from the evidence that however optimistic he may have been at one time, he was never actually able to finance the purchase. The court's charge was not unfavorable to the defendant; the portion of it to which error is assigned is not erroneous.

And now, to wit, April 24, 1943, defendant's rules for judgment n.o.v. and for new trial are discharged.

Defendant appealed.

*Luther C. Schmehl,* for appellant.

*Harry R. Matten,* of *Matten & Matten,* for appellee.

PER CURIAM, January 27, 1944:

The judgment is affirmed on the opinion of Judge SHANAMAN.

Enos, Appellant, *v.* Enos.